# Stone *et al. v.* Rice.

*Action against Carrier for Non-Delivery of Goods.*

1. *Consignee, delivery to; what may amount to.*—There are cases in which a carrier on a river may exonerate himself from liability for non-delivery of goods, although they were not delivered to the consignee, by proof that the goods were delivered at the landing to which they were consigned, in accordance with the well established custom of the community in receiving goods destined to that point; but such a custom must be shown to be a reasonable one in view of all the circumstances.

2. *Same; what not a delivery.*—A steamboat carrier, having goods consigned to a consignee at a particular landing, where there had been a warehouse-keeper who usually received and took care of goods landed there, can not avoid liability by proving a delivery of goods at the usual place on the river bank, without any protection or guard, when the landing had, in the meantime, been broken up by an inundation, and the washing away of the buildings, and the removal of the persons, which constituted it a landing.

APPEAL from Circuit Court of Mobile.

Tried before Hon. H. T. TOULMIN.

The appellee, H. A. Rice, brought suit against the appellants, Stone, Gray and Coleman, who were owners of the steamboat Clara, to recover damages for the failure to deliver a box of goods shipped from Mobile, and consigned to appellee at Gore's Landing on the Tombeckbee river.

The box of goods was delivered on board the Clara on the 9th day of May, 1874, and put ashore at Gore's Landing, three days afterwards, under the circumstances stated in the opinion, and was subsequently stolen. The appellants sought to defeat a recovery, by proving a delivery according to the usage and custom on that river, by landing and leaving the freight, as was done in that instance, and offered evidence tending to show that it is the "well established custom and usage of steamboats on the Tombeckbee river, to blow the whistle and ring the bell on approaching landings, to give notice that the boat was coming, and then to put off the freight, as the box of goods was put off, and proceed on the voyage, whether any one was there to receive the freight or not; that the custom was to blow the whistle and ring the bell as the boat was landing to give notice of the coming, and then putting off the freight ten feet perpendicular above the surface of the water, and proceed on the voyage, whether

any one was there to receive the freight or not; that this known usage and custom to so land and deliver goods at Gore's landing had existed for many years, and that the plaintiff well knew of this usage and custom, and had been so receiving freight for many years."

The court, on motion of plaintiff, excluded this evidence, and the defendants excepted. The defendants asked several charges in writing, asserting, in substance, that the defendants were not liable, if the box of goods was delivered according to this custom and usage. These charges were refused, and defendants excepted.

The exclusion of evidence as to the alleged custom, and the refusal to charge as requested, are now assigned as error.

BOYLES & OVERALL, for appellants.—The custom and usage of trade should have been received. It entered into the contract, and excused a personal delivery to the consignee.— 17 Wendell, 305; 6 Hill, 165; 53 Barbour, 214; 9 Iowa, 487; 3 Blatchford, 282; 40 Ala. 184; 29 Ala. 221; 49 Ala. 465. It was the consignee's duty to be on the alert, and take steps to protect his goods. Neither he nor his agents were at the landing, and the carriers were not bound to hunt him up, or keep the freight on the boat until he could be found.

JAMES BOND, for appellee.—There was no proof or offer of proof, of a custom or usage, to deliver goods at an *abandoned* landing, after the warehouse and keeper had moved elsewhere. What would be reasonable and proper, in a case where there was a delivery at a landing, where there was a warehouse and watchman, would be unreasonable when the landing was abandoned, and no one expected goods to be brought there.—*Ostrand v. Brown*, 15 Johns. 39; 15 Ill. 561; *Southern Express Co. v. Armistead*, 50 Ala. 350. Nothing was shown, therefore, equivalent to a delivery, even according to the alleged custom, and the court, in refusing the charges and excluding evidence offered, correctly held that the facts shown in evidence, were no defense to the action.

MANNING, J.—Appellee, plaintiff in the Circuit Court, sued appellants and recovered of them the value of a box of goods shipped from Mobile to him at Gore's Landing, on the Tombeckbee river, by their steamboat, the Clara. Plaintiff, who lived four and a half miles from the landing, in the interior, ordered the goods by letter on the 15th of April, and they were shipped on the 12th of May following. In the meantime, on the 18th of April, heavy rains had caused an

[Stone et al. v. Rice.]

inundation of the banks at Gore's Landing, by which the warehouse and other buildings there were carried away, and the building in which the warehouse-keeper lived was undermined and made uninhabitable. No other house was in view from the landing, or was nearer to it than half a mile. The landing was in fact abandoned, there being no person staying there to receive or take care of goods that might be left thereat. Another landing was afterwards established at a distance of about half a mile higher up the river; though, this was done after the Clara went up on the occasion when she carried the goods in controversy. The condition of the place, known as Gore's Landing, and the effects of the freshet there, were obvious when, in open day, the Clara arrived; but she had not before been up the river after the freshet on the 18th of April.

According to the bill of lading, the box of goods was to be delivered to the plaintiff, H. A. Rice, or his assigns, at Gore's Landing, freight having been paid by the shipper. On approaching the place, the boat's "whistle was blown and the bell rung, and the boat landed and put off said box of goods, more than ten feet perpendicular above the surface of the water; and the river was falling at the time. . . . This box was put off at the landing, as other similar freight had been put off for this plaintiff before the freshet, time and time again;" but on such occasions previously, there was a warehouse-keeper there "who kept the landing as a public landing, and who received pay from plaintiff and others for his services as such warehouseman, and received and stored plaintiff's goods landed there before said freshet. . . . . The evidence tended to show that the box of goods was stolen and lost to plaintiff."

The question presented for decision is, whether defendants might exonerate themselves from liability by proving that this mode of putting off freight at the landings on the river and at Gore's Landing, whether there was any person present to receive it or not, was in accordance with the custom and usage of river steamboats in delivering goods shipped by them for such landings?

We have no doubt that there are cases in which a delivery of goods not to the consignee thereof, or according to the letter of a bill of lading, may be shown to be in accordance with an established custom, and therefore valid. Many precedents of this kind are to be found in the books, and steamboats that ply on rivers in a sparsely peopled country, could not carry on their business, advantageously to the community, or for their owners, if they must, whenever they have goods for persons in the interior, to be delivered at

(7)

[Allen v. The State.]

landings along the river, wait until the consignees shall come or send in to receive them. And in such circumstances, it will doubtless happen that customs will grow up by usage which may be considered as entering into and modifying, to some extent, the contracts with such common carriers for the transportation and delivery of goods. Doubtless a deposit, sanctioned by usage, of the goods in question on the river bank, at Gore's Landing, within view of, and where they could be protected by the warehouseman, whether so protected in fact or not, would have been good.

But no custom, if it were possible for such a custom to grow up, could be upheld as reasonable, which would justify a steamboat carrier, who had goods consigned to a person at a particular landing on the river where there was a warehouse and a warehouse-keeper, who usually received and took care of goods landed there for the consignee,—in putting out such goods on the river bank without any protection, when the landing had, in the meantime, been broken up by an inundation and the washing away of the buildings and a removal of the persons that constituted it a landing.

All the assignments of error in this case are founded on the maintenance of the contrary of this proposition, and are, therefore, not well taken.

Let the judgment of the Circuit Court be affirmed.